w· PLAINTIFF

# ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE _HAWAII_ DISTRICT OF _____

_____ DIVISION

*(Write the District and Division, if any, of*
*the court in which the complaint is filed.)*

**FILED IN THE**
**UNITED STATES DISTRICT COURT**
**DISTRICT OF HAWAII**

**JUL 15 2020**

at _2_ o'clock and _30_ min._P_ M
**CLERK, U.S. DISTRICT COURT** w
PAID #1029014

__TANGEE RENEE LAZARUS__

_____

_____

*(Write the full name of each plaintiff who is filing*
*this complaint. If the names of all the plaintiffs*
*cannot fit in the space above, please write "see*
*attached" in the space and attach an additional*
*page with the full list of names.)*

**Complaint for a Civil Case**

Case No. **CV20  00313  HG  RT**

*(to be filled in by the Clerk's Office)*

Jury Trial:   ☑ Yes   ☐ No

*(check one)*

-against-

__See Attached Defendants__
__List__
__Hawaii Public Housing Authority__

*(Write the full name of each defendant who is*
*being sued. If the names of all the defendants*
*cannot fit in the space above, please write "see*
*attached" in the space and attach an additional*
*page with the full list of names.)*

**Mailed On**
Date__JUL 16 2020__  w

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach
additional pages if needed.

Name                  _TANGEE RENEE LAZARUS_
Street Address        _1541 KALAKAUA AVENUE #1012_
City and County       _Honolulu Hawaii , Honolulu County_
State and Zip Code    _Hawaii 96826-2482_
Telephone Number      _(808) 636-8602_
E-mail Address        _tangeelazarus@live.com_

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint,
whether the defendant is an individual, a government agency, an organization, or
a corporation.  For an individual defendant, include the person's job or title (if
known).  Attach additional pages if needed.

Defendant No. 1
Name                  _Hakim Ouansufi_
Job or Title          _Executive Director Hawaii Public Housing Authority_
(if known)            _(HPHA)_
Street Address        _1002 North School Street_
City and County       _Honolulu City and County_
State and Zip Code    _Hawaii 96801_
Telephone Number      _(808) 832-4694_
E-mail Address        _hakim.ouansufi@hawaii.gov_
(if known)

Defendant No. 2
Name                  _Isaac Ah Sam_
Job or Title          _Project Manager, Amp 34, HPHA_
(if known)
Street Address        _1545 KALAKAUA AVENUE_
City and County       _Honolulu City and County_

2

State and Zip Code    *Hawaii  96826*
Telephone Number    *(808) - 973-0922*
E-mail Address    *ioane.ahsam @ hawaii.gov*
(if known)

Defendant No. 3

Name    *Janice Mizusawa*
Job or Title    *Former Project Manager Amp 34*
(if known)    *HDHA*
Street Address    *1002 North School Street*
City and County    *Honolulu, City and County*
State and Zip Code    *Hawaii  96801*
Telephone Number    *(808) 832-4692*
E-mail Address    *janice.mizusawa@ hawaii.gov*
(if known)

Defendant No. 4

Name    *Ryan Okahara*
Job or Title    *Honolulu Regional Manager, U.S.*
(if known)    *Department of Housing and Urban Development*
Street Address    *1132 Bishop Street, Suite 1400*
City and County    *Honolulu, City and County*
State and Zip Code    *Hawaii 96813-4919*
Telephone Number    *(808) 457-466*
E-mail Address    *HIWebmanager@ HUD.gov*
(if known)    *See Attached Defendant(s) List*

## II.   Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two
types of cases can be heard in federal court: cases involving a federal question and cases
involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising
under the United States Constitution or federal laws or treaties is a federal question case.
Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another
State or nation and the amount at stake is more than $75,000 is a diversity of citizenship
case.  In a diversity of citizenship case, no defendant may be a citizen of the same State
as any plaintiff.

3

Defendants

Hakim Ouansufi

Executive Director Hawaii Public Housing Authority (HPHA)

1002 North School Street

Honolulu City and County

Hawaii 96801

(808) 832-4694

hakim.ouansufi@hawaii.gov


Ioane Ah Sam

Project Manager, Amp 34

1545 Kalakaua Avenue

Honolulu, City and County

Hawaii 96826

(808) 973-0922

ioane.ahsam@hawaii.gov


JoAnn Takahashi

Public Housing Specialist I

1545 Kalakaua Avenue

Honolulu, City and County

Hawaii, 96826

(808) 973-0922

joann.takahashi@hawaii.gov


Janice Mizusawa

Former Project Manager, Amp 34

1002 North School Street

Honolulu, City and County

Hawaii, 96801

(808) 832-4692

janice.mizusawa@hawaii.gov

Marisa Castagna

Social Services Assistant, Project Amp 34

1545 Kalakaua Avenue

Honolulu, City and County

Hawaii, 96826

(808) 973-0922

marisa.castagna@hawaii.gov

Stephanie Fo

Former Project Manager, Amp 34

1002 North School Street

Honolulu, City and County

Hawaii, 96801

(808) 832-4692

stephanie.fo@hawaii.gov

Ryan Okahara

Honolulu Regional Manager, U.S. Department of Housing and Urban Development (HUD)

1132 Bishop Street, Suite 1400

Honolulu, City and County

Hawaii, 96813-4918

(808) 457-4662

HIWebmanager@HUD.gov

Curtis Kaneoka

Public Housing Specialist I, Amp 34

What is the basis for federal court jurisdiction?  *(check all that apply)*

☑ Federal question          ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A.** **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

*See Attached p.2 of Complaint*
*Federal CARES Act., Americans with Disabilities Act*
*Plain Language Act, Fair Housing Act, Civil Rights Act of A.K.*
*Whistleblower Provisions of aforementioned Acts*

**B.** **If the Basis for Jurisdiction Is Diversity of Citizenship**

1. The Plaintiff(s)

   a. If the plaintiff is an individual

   The plaintiff, *(name)* TANGEE RENEE IRANS is a citizen of the State of *(name)* HAWAII .

   b. If the plaintiff is a corporation

   The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s) *See Attached Defendant(s) List*

   a. If the defendant is an individual

   The defendant, *(name)* JoAnn Takarashi , is a citizen of the State of *(name)* HAWAII . *Or* is a citizen of *(foreign nation)* _____.

4

b.   If the defendant is a corporation

*TRC*

The defendant, *(name)* ~~JoAnn Takahashi~~, is
incorporated under the laws of the State of *(name)*
_____, and has its principal place of
business in the State of *(name)* _____.  *Or* is
incorporated under the laws of *(foreign nation)*
_____, and has its principal place of
business in *(name)* _____.

*See Attached*

*(If more than one defendant is named in the complaint, attach an
additional page providing the same information for each additional
defendant.)*

3.   The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant
owes or the amount at stake—is more than $75,000, not counting interest
and costs of court, because *(explain):*

$200,000 , based upon the number
of discriminatory incidents over the
last year, and since 2014, and the size of APHN

**III.   Statement of Claim**   *SEE Attached Complaint pp 1-27*

Write a short and plain statement of the claim.  Do not make legal arguments.  State as
briefly as possible the facts showing that each plaintiff is entitled to the damages or other
relief sought.  State how each defendant was involved and what each defendant did that
caused the plaintiff harm or violated the plaintiff's rights, including the dates and places
of that involvement or conduct.  If more than one claim is asserted, number each claim
and write a short and plain statement of each claim in a separate paragraph.  Attach
additional pages if needed.

The defendants all work for Hawaii Public Housing
Authority and they acted willfully with evil intent
to attempt to force Tangee Lazarus to leave 1541 Kalakaua
Avenue by working with tenants to spy on Lazarus, keep
a log of the identity and frequency of her guests, and allow Lazarus
to be physically assaulted without punishing the other
tenants - and the assaults are filmed. Every
defendant blocked Lazarus's efforts to mitigate
damages from the racially based discrimination
and sexual harassment in the form of a hostile environment
by retaliating against Lazarus with attempts to evict her.

5

**IV.     Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

1. $200,000 or whatever the Court deems appropriate.

2. Pest Eradication to control roach infestation notably in one apartment on 10th floor of 1541 KALAKAUA AVENUE because roaches exacerbate respiratory ailments in seniors and people with underlying conditions. Management acknowledged on tape knowing the danger of roaches with Coronavirus and has not acted.

3. Move violent tenants to another building Sandra Tautua and Yung Sing Chong

**V.     Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.     For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: July 14, 2020

Signature of Plaintiff   Tangee Renee Lazarus

Printed Name of Plaintiff   TANGEE RENEE LAZARUS

**B.     For Attorneys**

Date of signing: _____, 20__.

6

## Introduction

1.  This is a plea for relief from Defendant's violation of Plaintiff's civil rights under the Americans with Disabilities Act of 1990, Section 504 of the Rehabilitation Act of 1973, and the Fair Housing Amendments Act of 1988, arising out of Defendant's ownership, operation, control and management of Kalakaua Homes, Amp 34, a Hawaii Public Housing project under Hawaii Public Housing Authority.

2.  Plaintiff, Tangee Renee Lazarus, is the person whose interests are represented in this action.  She is a low-income unmarried woman of mixed African- and German- American heritage.  Plaintiff has been a resident of Hawaii since 1998.  Her verified disabilities are post-traumatic stress disorder and seizure disorder. These disabilities make her eligible to live in Kalakaua Homes—a residential complex managed by HPHA composed of two high rise buildings, Paokalani (16 floors) and Makua Ali'i (20 floors)  and one low rise building, 1545 Kalakaua (10 floors) that were all built in 1967. The problems began in July 2014 when the plaintiff received approval of a request for a reasonable accommodation to move within Kalakaua Homes or Amp 34, from a studio, or 0-bedroom unit in Paokalani Apartment to a 1-bedroom unit in Makua Ali'i Apartment (building 1012, unit 1012), 1541 Kalakaua Avenue.

3.  Plaintiff Tangee Lazarus lives in a facility that is characterized by discrimination based on her membership in at least two protected classes, she endures hazardous conditions for herself and the senior residents most at risk from the Corona virus due to the pervasive toxic particulate in the air in the form of roaches and their detritus. Plaintiff has endured

1

maintenance and when she was deemed ineligible for the federal CARES Act and charged

a rental late fee, unlike other Americans, in May 2020. She has had her privacy violated by

tenants at management's encouragement, and she has had her rights under HIPPA

violated. She has endured the humiliation of slander and falsehoods not just added to her

permanent record, but that record was shared with tenants and other staff. Management

has committed mail fraud in its efforts to get rid of her. She has even been denied the

protections of the Plain Language Act of 2010.

## JURISDICTION AND VENUE

4.  The Court has jurisdiction of the subject matter and the party pursuant to 28 U.S.C. and

    the Americans with Disability Act, the False Claims Act, and the Fair Housing Act.

5.  Venue is proper in the District of Hawaii pursuant to 28 U.S.C. because the events giving

    rise to the Plaintiff's claims occurred in this District.

2

**PLAINTIFF**

6.   Plaintiff lived in a studio apartment Paokalani, 1538 Kalakaua Avenue, from October 13, 2013-June 30, 2014 without incident. On July 01, 2014 Lazarus moved into the other high rise building on the property by using the reasonable accommodation for more living space guaranteed to her through the ADA.

7.   The defendants' facility at 1541 Kalakaua Avenue, Makua Ali'i, was characterized by racial discrimination from the residents as soon as she moved in.   In one incident a resident tried to block Lazarus from exiting the elevator with an outstretched arm and the words, "No! Only Asians this floor." The residents made a point of getting off the elevator if Lazarus got on, or they would try to convince her to "take next elevator." When Lazarus walked by other residents, they made a point of ducking and shielding their heads, as if expecting the five-foot-tall Lazarus to strike them.   Lazarus noted that although she was not a youth, she was by far the youngest person in the building having just turned 40. There were two elderly black men, but Lazarus was the only black woman in a building that was entirely populated with elderly non-English speaking Asians.

8.   Lazarus did not go to management with her issues because she did not know, at that time, management was supposed to intervene in racially motivated discrimination by one tenant towards another in public housing.   Lazarus finally spoke to Public Housing Specialist I JoAnn Takahashi in 2015 when her next-door neighbor Yung Sing Chong was spending time peering into her windows that fronted the open-air hallway. Every time she returned home; she saw him hurrying from her window to his unit before she could pass him in the hallway on the way to her front door. Lazarus was single and she felt frightened by this peeping tom.

3

9.  Lazarus was surprised to discover that PHS Takahashi knew well the bullying she was facing. Takahashi told Lazarus that a group of tenants had come to the office to complain about a black woman being on their floor at all hours of the day and night, yet she did not seem to be there to clean. Takahashi assured Lazarus that she would speak to the family of the neighbor Chong and the spying would stop.

10. Takahashi not only did not discourage the spying, but she encouraged the spying. She and PHS I Curtis Kaneoka met with the neighbors about Lazarus, but Lazarus was not invited to the table nor did she learn of the meeting until the departure of the manager at the time Janice Mizusawa. Kaneoka and Takahashi met with the residents in 2016 and wrote a document detailing their observations that Lazarus had male visitors the neighbors did not know. The report had the names Kaneoka and Takahashi on it and much of it was whited out. When Lazarus obtained her records for a second time in 2019, she discovered the complete report and other complete documents—no white out. Complaints naming complainants are not supposed to go in tenant files for privacy issues. After viewing her complete file Lazarus saw that management had created a false narrative about Lazarus by using the records to cast her in the role of building villain and threat to the safety of staff and residents. False allegations were spread by Kaneoka, Takahashi, Mizusawa and they were spread to the residents, Honolulu Police Department (whose officers were ignored when they told management Lazarus had done nothing wrong), maintenance, and security staff. Lazarus had male visitors and therefore Lazarus's record states that she is a drug trafficker and prostitute. Residents were encouraged to keep spying on Lazarus and they were given carte blanche to mistreat Lazarus. Lazarus suffered three assaults that were seen, two of which have garnered hundreds of views on YouTube. On May 29, 2019

resident Sandra Tautua threw bleach on Lazarus, which is on YouTube entitled, "Bleach Throwing Neighbor." She was not punished by new manager Stephanie Fo. Instead, there is video evidence that Fo worked with Tautua on what to say to try to get out of trouble. Charges against Tautua are still pending with the state of Hawaii but due to the pandemic there is suspended action.

11. Next door neighbor Yung Sing Chong also escalated his efforts against Lazarus with management blessing. He punched Lazarus December 25, 2018, in front of witness, fellow tenant Santos Rosario. Rosario made a sworn video statement that Stephanie Fo instructed him not to testify for Lazarus. Fo presented a different face to Lazarus. In 2018 acting project manager told Lazarus she was aware of how racist people are in housing, including Makua Ali'i, and apologized on behalf of her fellow Hawaiians for the lack of Aloha that she had seen towards African Americans ever since she returned to Hawaii after living in California.

12. Fo repeatedly emailed Lazarus that both Tautua and Chong had been referred for eviction, but that was not true. They had not received so much as a verbal censure. Yet Lazarus was always on the verge of eviction due to blatantly irrational violations. There was no consequence for people who had actually been violent, while Lazarus, a similarly situated tenant had on several occasions been threatened with eviction for things she had not done as opposed to actions videotaped in front of witnesses.

13. Lazarus was so disheartened by the bullying, and what HUD calls mobbing, when management and tenants gang up against another tenant, that she wrote to the HUD regional manager Ryan Okahara. She asked Okahara to look at the documents in her records and he would see for himself that she had been accused for no reason, she had

5

been assaulted, she had been subjected to rules invented only for her (i.e., male visitors=drug trafficking).

14. Lazarus was assaulted for the second time by her next-door neighbor Yung Sing Chong on May 13, 2020.  Chong beat Lazarus about the head with a mop.  The first 37 seconds of the assault is caught on film and posted to YouTube.  After a couple of minutes management and maintenance walked to scene of the assault, outside of Lazarus' unit 102 and guided Chong away. Chong wanted to return to hitting Lazarus over the head with is mop and he was repeatedly restrained by project manager Ioane Ah Sam and the responding Honolulu Police Department Officer.  Management encouraged the police not to arrest Chong, despite the video.

15. Chong's son arrived with an explanation ready, prior to knowing the details.  Lazarus heard him say that Lazarus hit his father and he wanted Lazarus arrested, but manager Ah Sam said he could not say that because Lazarus managed to tape the interaction.  Lazarus recorded the meeting she had with manager Ah Sam on May 15, 2020 who told her that there was a process the had to take place to evict the violent neighbor.  Tenant services point person Marisa Castagna said that given the danger Lazarus is in, Lazarus needed to have a person to check in with daily. Castagna's recommendation is one piece of direct evidence that shows she is aware that Lazarus is in danger, but she was not volunteering to be that point person who offered support to Lazarus.  Castagna became part of the problem shortly after starting at Amp 34 by following the tradition of telling Lazarus to let her know what is going on, and then doing nothing about it, no matter what the law says she must do to protect Lazarus from racially motivated bullying.

6

classes was followed by retaliation. The retaliation was started by HUD regional manager Ryan Okuhara in July 2019 and management and staff have continued to retaliatory actions that include denial of reasonable accommodations, denial of due procedural process by refusing Lazarus recourse through grievances, falsified documents, threats of eviction with bogus write ups, and more, which will be detailed. Over the past year, July 2019-2020, there have been 10 to 20 incidents of discrimination, depending on how one tallies the incidents.

17. Lazarus received a right to sue letter from the Hawaii Civil Rights Commission December 2019.

18. Lazarus could also document the protections afforded other tenants that she did not receive. Lazarus had hoped Okuhara would read the documents that she was only able to access in 2018. She believed HUD would never allow such blatant discrimination and if the right people knew the truth about Kalakaua staffs' acts of commission and omission, a remedy would be forthcoming.

19. There was immediate retaliation against Lazarus. In late July, Lazarus received notification that her request for a 0- or 1-bedroom unit had been granted. Lazarus had not applied for another transfer after the approval of her 2013 request to move out of a studio and into a 1 bedroom. She assumed there was a mistake. Lazarus contacted the housing office. There was no mistake. There was a transfer application for Lazarus, and that transfer had been approved, but Lazarus knew nothing of it and had not written it. Manager Fo claimed that Lazarus made a verbal request of Fo to write the transfer request. Lazarus had always been in service to her peers by doing paperwork for those who needed

7

help in this area.  Lazarus was not inclined to ask Fo's aid with paperwork.  Fo's motive

for secretly doing the transfer request was not only to remove Lazarus but to retaliate

against Lazarus.  Fo's retaliation for Lazarus complaining to a government agency about

being mistreated by Fo and staff was to make a public disclosure of private facts by telling

tenant Rosario about Lazarus's complaint, all the while casting Lazarus in a false light and

encouraging the tenant to keep harassing Lazarus.  In the transfer request situation, Fo's

retaliation was the potential denial of larger living space and denial of the federally

mandated reasonable accommodation by making it appear Lazarus would willingly

surrender her ADA based Reasonable Accommodation of a 1-bedroom unit if a studio

apartment became available anywhere else on Oahu.

20. Lazarus discovered that Fo had contacted her mental health care provider without her

permission or even her knowledge.  It is standard for tenants to take the forms to their

providers.  Management went against procedure by starting contact with the provider and

not leaving this to Lazarus.  Fo sent Gino a document that she misrepresented as having

been signed by Lazarus.  In fact, the signature is a photocopy.  Fo used the RA form to

asking Gino's opinion of Lazarus moving to a 0 or 1-bedroom unit in the Honolulu area

"to feel safe."  The document read that if Gino did not return the answer by August 14,

2019 Lazarus would not receive the transfer.  Gino tried to reach Lazarus, who was not

expecting to hear from her provider and did not check her voicemail, and when she could

not reach Lazarus she filled out the R.A. form out of an abundance of caution so Lazarus

would not lose her housing.  When Lazarus saw Alissa Gino after receiving the approval

for the transfer in the mail, Lazarus compared the documents and saw that she did not

receive the same document Gino received.  The reason given that Lazarus needed the

8

request was "to feel safe." The fraudulent document Lazarus received through the U.S. mail (a form of mail fraud), purporting to be a response to her request did not give any reason she needed to move. Fo mailed Lazarus the "approval" but left off the reason "to feel safe" so that Lazarus would not have learned she had a different document than her provider had Lazarus not insisted on seeing every piece of paper with her name on it and the provider honored that request.

21. Lazarus interpreted the transfer request as retaliatory for several reasons. Fo completed the transfer request without help from Lazarus by using the photocopier to transfer the signature "Tangee Renee Lazarus" to the R.A. Lazarus would not have signed a document that was a concession to bullying and terrorism. If Lazarus had to leave her housing "to feel safe," then the bullies won, and management would have a method they felt good about using to get rid of the next undesirable person. Or, alternatively, management is making a veiled threat that there is no safety to be had at Kalakaua Housing. There was nothing else Lazarus could do but leave her own home. It is significant that Fo was willing to violate HIPPA by sharing information confidential information with a provider, but she did not take the provider's advice to do something about the bullying that the provider had witnessed in the video.

22. Ryan Okuhara responded to Lazarus September 7, 2019 and his lack of interest in Lazarus and failure to follow up on her concerns was inconsistent with normal federally employed discrimination investigators and is therefore suggestive of the illegal motive of sharing prejudice against Lazarus due to her race and also, we will find discover, her gender and familial status as a single person. Lazarus asked him to verify every one of her claims with the documents in her permanent file. The file should hold all the issues the tenant

had while dwelling in the public housing project. Although Okuhara could have accessed her file, he cavalierly chose to ask HPHA, the very people who were the subject of her complaint, to summarize her file. Okuhara wrote that HPHA said they did not have all the information, so their file summary was incomplete. The blatantly incomplete summary was Okuhara's source about discrimination against Lazarus. Then Okuhara, in what was a deliberately insulting response to the request to examine her actual file, wrote to Lazarus that he was going to use his letter to summarize the admittedly incomplete summary. Perhaps Okuhara wanted to convey that he did not want to spend the effort to truly investigate Lazarus's issues.

23. Okuhara's letter responding to Lazarus' pleas for help was a summary of the incomplete HPHA summary of records for Tangee Lazarus. Okuhara was overtly disrespectful. He said he had not read the material. He said he had read an incomplete report about the material. He made no mention on attempting to obtain all of the records, and he made no mention on following up with HPHA to make sure they evicted the people they said they were going to evict. Okahara was comfortable stating to Lazarus there was no evidence in the summary by HPHA of any wrongdoing on the part of HPHA. Okahara is careful not to say there is no evidence because there is so much evidence it is an embarrassment of riches. He merely says he was not presented with evidence of discrimination, harassment, differential rules, and indifference to Lazarus' safety. Both perpetrators of the two verified assaults "had been referred for eviction." At the time of this writing both assailants continue to live in their 10th floor units and received no consequences from management despite HUD's zero tolerance policy for violence that other tenants enjoy. Tangee Lazarus had received written violations that threatened eviction because tenants

10

made unverified and unverifiable allegations that she had many male guests, and many male guests were potentially a danger, not that there had been a single issue. Both Sandra Tautua and Yung Sing Chong committed actual assaults against Lazarus. They are not similarly situated people compared to Lazarus because they have been violent (on camera!) and Lazarus had no such history. Management did nothing to discipline them for actions, while threatening to evict Lazarus for hypothetical non-events. At least the state of Hawaii has been proactive with Tautua and Chong. They both have criminal cases pending with the prosecutor's office for assaulting Lazarus but due to the pandemic these actions are on hold.

24. Significantly, Okuhara gave a description of what HUD considers discrimination and said the events had never occurred because there is no tolerance for discrimination within HUD. Okuhara said there could not have been any effort by management to encourage tenants or staff to gather information about the identity and frequency of Lazarus' unit Okuhara wrote since that sort of discrimination "has no place within HPHA." Tangee Lazarus had abundant documentation dating back to 2015 of management keeping records about the identity and frequency of Lazarus' guests and management encouraging tenants and other staff to keep records of the identity and frequency of Lazarus' guests. It is not known if Okuhara had a blatant disregard for the truth in making this false claim, if he did not know the truth because he did not know how to investigate or if he did not know the truth because he did not care to investigate. In any case Ryan Okuhara defined discrimination and proved the case that there is discrimination against Lazarus just by the letter he sent full of falsehoods.

11

25. Here are examples from Lazarus's tenant file that Ryan Okuhara could have used as evidence of management discrimination against Lazarus. On August 01, 2016 PHS Curtis Kaneoka and JoAnn Takahashi had a meeting about Tangee Lazarus with tenants Xian Niu, Ling Huang, Yung Sing Chong (assailant), and another couple on the 10th floor. PHS Kaneoka took notes which were initialed by PHS Takahashi and approved by then-manager Jan Mizusawa. According to the residents, Lazarus had many men over throughout the day and the residents did not recognize the men. They listened for the men to be let into her unit and noted, for Lazarus' permanent record, that "they are not greeted at the door, they are simply let in." (Management does not question how tenants can know this about the unit at the far end of the hallway). The tenants said they could hear the chain locked behind her visitors and no one in management ever verified if Lazarus had a chain lock on her door (she never did). The tenants also said that in addition to different men between the ages of 30-50 years of age visiting, they also heard Lazarus walking by in what sounded like heels. Yung Sing Chong illegally spied on Lazarus by listening to her use the bathroom, and his observation that Lazarus or guests run water in the bathtub. Ling Huang in 912 said she could hear Lazarus walking around in what sounded like high heels.

26. There are no rules against running water, having male guests, the hours of visitors, and wearing heels. Ryan Okuhara said in his September 07, 2019 letter that there were no separate rules for Lazarus. However, based on these insignificant "observations" of non-rules, then manager Janice Mizusawa called the police on Lazarus August 02, 2016 and told police she suspected Lazarus of prostitution and drug trafficking. PHS Curtis Kaneoka noted the meeting between management and HPD in a "log of contact" that had been created for Lazarus. HPD was very clear that there was no problem as long as there were

no rules about when guests could visit, no rules governing the gender of guests, and that Lazarus was the lease holder of unit 1012 in building 1012. In a blatant disregard for the truth, Mizusawa fraudulently misrepresented the existence of a police report as something of significance rather than a standard occurrence for anyone who called the police. The Lazarus file held Mizusawa's August 02, 2016 email to Maximum Events Security siting police involvement with Lazarus and asking the security staff to log all of Lazarus' movements along with paying her special attention.

27. Lazarus was never expected to see her file. Jan Mizusawa was accused of various improprieties and was replaced in late 2018 by Stephanie Fo. Lazarus had asked to see her file for years, but she was not granted access until November 2018 when Fo allowed her to see the file, over PHS JoAnn Takahashi's objections. Takahashi grabbed the file from Lazarus when Lazarus had arranged a file viewing in April 2019. Lazarus filmed this interaction for evidentiary purposes and put on YouTube for Okuhara's examination.

28. When she saw her permanent file, Lazarus discovered she had the proof she needed to show the injustices happening at Kalakaua Housing. For example, the August 2016 meeting between the residents and management about Lazarus had been documented but all references to the fact that the participants were Chinese had been whited out. The names had been whited out, the fact that Cantonese speaking interpreters had been present in the meeting had been whited out, and the fact that a neighbor had been speaking Cantonese had been whited out. The other notation that had been whited out was the next-door neighbor explaining that he listened to Lazarus while she was in the bathroom. When Lazarus obtained her file in April of 2019 to see if the assaults against her had been added (they had not) she discovered that the complete documents without white out had been

13

30. Moreover, in the unredacted paperwork Takahashi had noted parenthetically. that the neighbors were "Chinese." This racial reference is direct evidence of the racial motivation behind the unfounded allegations. The accusation of prostitution, as opposed to gambling, or breeding fighting dogs, or any other unfounded allegation one can think of, is indicative of discrimination based on sex or gender and even familial status, if one interprets a family to consist of a single woman. A married woman would not have faced these allegations.

31. Significantly, in the typed notes from the August 11, 2016 meeting between Lazarus, Takahashi and Mizusawa, Mizusawa stated directly that tenants will be contacted and asked if they have any further observations. Okuhara did not just misspeak, he gave the opposite of the truth in his September 07, 2019 letter to Lazarus.

32. This is not to say Ryan Okuhara did nothing about Lazarus' complaint of undisciplined assaults, bullying by residents, and the invention of rules made only for her. What Okuhara did was join in the bullying himself. According to fellow tenant Santos Rosario, sometime around August 2019, then manager Stephanie Fo approached him to tell him that tenant Tangee Lazarus had filed a complaint "with the government." Santos said that the recipient of the complaint had investigated Tangee Lazarus and discovered her history of prostitution and they were going to see if they could have Lazarus arrested. Evidently the powers that be at HUD and HPHA could not have Lazarus arrested, but Rosario was credible because for one thing, there is no way he could have known she had filed a complaint with management's supervisors unless someone in management told him. Why would Stephanie Fo tell him? She told him because e he was the person who had seen neighbor Chong punch Lazarus. According to Rosario, if he did not testify to seeing that punch, he could stay in the housing project no matter how much back rent he owed. Suddenly Lazarus understood why Okuhara had written In the September 07, 2019 letter

14

Okuhara did was join in the bullying himself. According to fellow tenant Santos Rosario, sometime around August 2019, then manager Stephanie Fo approached him to tell him that tenant Tangee Lazarus had filed a complaint "with the government." Santos said that the recipient of the complaint had investigated Tangee Lazarus and discovered her history of prostitution and they were going to see if they could have Lazarus arrested. Evidently the powers that be at HUD and HPHA could not have Lazarus arrested, but Rosario was credible because for one thing, there is no way he could have known she had filed a complaint with management's supervisors unless someone in management told him. Why would Stephanie Fo tell him? She told him because e he was the person who had seen neighbor Chong punch Lazarus. According to Rosario, if he did not testify to seeing that punch, he could stay in the housing project no matter how much back rent he owed. Suddenly Lazarus understood why Okuhara had written In the September 07, 2019 letter that the "sole witness" who saw the assault would not be willing to testify for Lazarus. Lazarus understood that management and tenants had mobbed together, despite the HUD rule that management was supposed to intervene in bullying based on protected class status. Okuhara decided to become a bully in his own right, along with Takahashi, Kaneoka, Mizusawa, and Fo. It is relevant for the purposes of this pleading to note that the group against Lazarus was all Asian, even at the levels of organization above Kalakaua management.

33. The retaliation continued throughout 2019. Fo wrote Lazarus up with dishonest accounts of events that she was not present to see. Fo used inflammatory language with many capitals when it came to quoting Lazarus. She continued her pattern of falsifying documents by charging Lazarus with threatening the safety of staff when she wrote

Lazarus up for swearing. Lazarus verbally requested an informal grievance but Fo said

she had missed the deadline to request a grievance because Lazarus had not signed the

grievance request form that Fo had given her. One day Fo was out of the office and new

PHS Marisa Castagna was able to produce two grievance request forms, one that Lazarus

had signed and one that had been photocopied with Lazarus' signature covered. The

illusion that Lazarus had not signed the grievance request was exposed. What is more

important is that one only need to make a verbal request for an informal grievance. Just

like the transfer request form, Fo had blatantly falsified paperwork and sidestepped policy.

34. Unfortunately, it did not take PHS Marisa Castagna long to take up the mantle of lying to

Lazarus. PHS Castagna is the tenant issues point person. Lazarus produced videos of

security being verbally abusive because, according to Ali'i security staffers, Fo had

instructed them to treat Lazarus badly. Castagna would say she was going to act by

talking to the new manager Ioane Ah Sam, but she never did. Lazarus documented racism

from other tenants, including a tape (again posted to YouTube) of an unauthorized resident

calling Lazarus the "N" word. No one cared. In fact, PHS Castagna told Lazarus in April

2020 "technically I don't have to keep you informed about the status of your complaints."

35. Tenants were so accustomed to treating Lazarus badly, with Management blessing, that

there on May 13, 2020 was another assault by neighbor Yung Sing Chong. Lazarus

arrived home and noticed Chong in the hallway and she saw management and some

maintenance staffers appearing to look up at Chong. Lazarus took out her phone to

document whatever was about to happen. Chong attacked Lazarus with the mop, and

when the tape was translated, he was saying "Die! I will hit you with this stick until you

die." Chong had pushed Lazarus into the corner at the end of the hall, and it seemed to

16

Lazarus that he wanted to push her off the 10th floor. It took at least three minutes of

Lazarus screaming for help before management and maintenance walked, not ran, to her

aid. The police came because someone, not staff, but another tenant saw that a woman

needed help. PHS Castagna and new manager Ioane Ah Sam encouraged the officers not

to arrest Chong. The police charged him with harassment, but they did not arrest him

(Report number 20-179418) out of respect for management's request for leniency for the

repeat offender.

36. Staff was alternately comforting Chong and holding him back from attacking Lazarus

again while the police were there. Lazarus heard Chong's son complaining to Castagna

about Lazarus bathing at all hours and that was why his father hit Lazarus. PHS was very

understanding and encouraged him to take his complaints to her so she could work on

getting Lazarus out. Upon hearing this response Lazarus called Castagna over and asked

if she had showed the tape with the racial slurs by the unauthorized resident to the

manager the way she had promised. Castagna said she had shown the "shortened version."

Which means, no.

37. PHS Castagna and manager Ah Sam also treated Lazarus differently from other tenants

when it comes to inspection. Lazarus was threatened with eviction because she had taken

steps to keep people from breaking into her unit by taping a piece of glass to the doorknob.

Lazarus had hoped management would have to admit the break ins happened.

Management did acknowledge the break ins; they just did not care about her safety. In an

inaccurate document, Ah Sam committed mail fraud by sending another violation and

threatening Lazarus with eviction for having the glass taped to the doorknob and not

clearing away clutter on January 28, 2020. The original inspection had been January 21,

17

2020. There was nothing on the doorknob on the 28th of January, yet Ah Sam stated in the violation letter that the failure to correct the problem to keep people from breaking in was why he was threatening Lazarus with eviction. He made no comment after acknowledging the break ins, as if to say, that is the way things are. Maybe Ah Sam is using subtle humor by threatening to evict Lazarus for creating dangerous conditions for a burglar(s) whose presence is undeniable.

38. Lazarus received a Reasonable Accommodation to have security clips installed on the jalousie windows to keep people from simply removing the window and reaching in to unlock the door. It takes under 30 seconds to break into an apartment this way and HPHA is well known for not taking minimal steps to increase security. Castagna and Ah Sam know that Lazarus is entitled to secured windows, but that maintenance refused to install them in March 2019 when they came to install a vent for a portable air conditioner. In the judgement of maintenance, it was not necessary. By lying to Lazarus and pretending to take action against tenants and unauthorized guests who used racial slurs against Lazarus (on tape) and threatened Lazarus with bodily harm, again on tape, Castagna steers Lazarus away from filing a grievance and receiving the procedural due process that is supposed to the grievance process for HPHA. Castagna knew, or should have known, to instruct Lazarus to begin the grievance process about the failure to install the reasonable accommodation of approved safety features. Instead Castagna pretended that Lazarus had never removed the diy safety measures on January 21, 2020, she dishonestly failed Lazarus for inspection on January 28, 2020,

39. Castagna passed news of that "failure" on to manager Ah Sam. Ah Sam wrote the letter dated February 02, 2020 saying Lazarus had failed inspection because of the diy safety

18

measures of glass taped to exterior facing windows that Castagna reported to be in place on January 28, 2020.  There was no glass on the window on January 28 2020 and the document Castagna gave Lazarus reflected the removal of the glass, but the letter threatening eviction from Ah Sam made no mention of the checklist Castagna gave Lazarus. Manager Janice Mizusawa, manager Stephanie Fo, and manager Ioane Ah Sam work with one set of documents that Lazarus is not ordinarily privy to, and Lazarus is given documents that are materially different from what management puts in her permanent file. This is direct proof that management under HPHA knows they are making false claims and due to their consciousness of guilt cover their actions with altered or incomplete documents.  Despite the tampering with the records, Lazarus can understand the deception that has taken place due to her own reliable records.  Every paragraph of this action has a supporting document that will serve as evidence, and in some cases, there is one or more supporting documents and one or more supporting videos.

40.  Had Castagna not lied and claimed the glass was still taped to the window, Ah Sam would have had no bogus foundation for writing Lazarus up as a threat to the health and safety of residents in the building.  When Castagna failed Lazarus on her annual inspection for creating unfavorable conditions for thieves with make shift window security measures, Castagna was denying her the spirit of the Reasonable Accommodation that was granted to help Lazarus have a safer living condition. Castagna was also supporting the veiled threat in the transfer request forged by former manager Stephanie Fo who sent the message that Lazarus would have to leave her home at Kalakaua Housing if Lazarus wanted "to feel safe." When Castagna passed on the bogus failure rating to manager Ah Sam he too denied Lazarus her rights under the Americans with Disabilities Act and denied her procedural

19

due process. This is direct evidence of mobbing behavior as managers pick up the mantle of bullying inflicted by the earlier manager. Kalakaua Housing had three managers between 2018 and 2020.

41. The May 29, 2019 assailant who used bleach as a weapon, Sandra Tautua, has a roach infestation. The rule about vermin is If there is one roach spotted, living or dead, the apartment is supposed to be treated and the tenant faces eviction. Castagna spent 20 minutes unsuccessfully looking for a roach in Lazarus' unit to have ammunition to use against Lazarus (she acknowledged she was looking for even one roach). In a conversation with Lazarus that was recorded for evidence, Lazarus said that roaches are dangerous for elderly and disabled people with underlying healthy conditions due to the effect on the respiratory system and now with the novel Coronavirus, would it be possible for management to do something to help this at-risk community increase their chances to stay healthy. No, management is taking no action to get rid of an obvious health threat, especially to the disabled. Circumstantial evidence suggests that Castagna declared herself "powerless" over the roach infestation, simply because it was Lazarus who had asked. Possibly Castagna is knowingly allowing the roach infestation because it is happening in Sandra Tautua's apartment. Sandra Tautua assaulted Lazarus with bleach but she is unpunished. Indirect evidence suggests that like tenant Santos Rosario, Tautua cooperates with management to bully undesirable (to management) tenants in exchange for a pass on the rules.

42. On June 01, 2020, Lazarus received a letter through the U.S. mail that began with a lie. The letter said that the missive was a follow up to a phone call between Lazarus and management. There had been no phone call. Here we have another incident of mail fraud

committed by management that feels they can treat Lazarus any way they want to. This time she was offered the chance to move to an economically depressed area in the 96701 zip-code, far from her home outside of Waikiki. The tenant who had just assaulted her was not moved to this other housing project, nor was he moved to another unit within Kalakaua homes. Tautua was not offered the unit in the 96701 zip-code. Ah Sam, in a taped conversation, said the process of disciplining the violent tenants is in the works but nothing is going to happen to either of them. In this era of black people being killed with impunity until the video hits the news media, Lazarus worries that she will be the next person killed and only after her death will the video of the neighbor hitting her with the mop rise to prominence. *During this crisis*

43. Manager Ah Sam charged Lazarus a late fee on her rent in May 2020 despite the federal CARES Act prohibiting the imposition of late fees.  Lazarus requested the criteria management used to consider her ineligible for the financial protections mandated the federal CARES Act. Lazarus has always been current on her rent no matter how inaccurate or incomprehensible the monthly bill. Deliberate obfuscation is directly disobedient to the Plain Language Act of October 13, 2010 that mandates federal government agencies write for their audiences (not themselves) in a manner that is clear, concise, jargon-free, complete and only needs to be read once to be understood hence improving government effectiveness and accountability.

44. Lazarus had paid the May 2020 rent late fee just as she did all the other fraudulent charges. Lazarus was able to obtain a copy of her ledger in 2018 when then-manager Mizusawa had to run a meeting for the entire project. Lazarus gamble that the newly hired accountant would not be familiar with the standard pattern of practice for treating Lazarus and that

21

she would honor Lazarus's request to see her own records.  Lazarus won the gamble and

fought the many fraudulent charges. The newly hired PHS accountant investigated.  PHS

Rowena Alanzo hand wrote notes in 2017 to then -manager Mizusawa to document on the

actual ledger that there was no explanation for why Lazarus, and only Lazarus, had been

charged. A close look at Lazarus' documents would have shown Ryan Okuhara that in

2016-2017 Lazarus, and only Lazarus had been inexplicably charged for basic

maintenance, charged for items not received, repairs not performed.

45. It is fortunate that Lazarus took pictures of her documents.  Lazarus asked PHS Castagna

for a copy of her complete file and many of the documents that prove discrimination,

retaliation, show bias were missing from the packet PHS Castagna represented as

complete. Lazarus paid $.25 per photocopied page for a total of $29.00 by money order to

on June 19, 2020.  Lazarus has pictures of the missing documents.  Even if PHS lies and

says Lazarus has the complete record, there is enough documentation of so much bias

since 2015-present that Lazarus can prove retaliation and discrimination in federally

funded public housing by state and federal employees.  There is a May 13, 2020 video of

Lazarus's neighbor repeatedly striking her in the head with a mop handle and that record is

not in the "Complete" file Lazarus obtained from Castagna. Lazarus is not the danger to

health and safety as the defendant's claim but her own health and safety are threatened

through the omission and commission of the actions of the main offenders who blatantly,

publicly, violated and continue to violate, Lazarus's civil rights through discrimination and

retaliation. Every sentence of every paragraph in this pleading is supported by

documentary and/or video evidence.  There is no speculation. The main offenders are

22

Janice Mizusawa, Curtis Kaneoka, JoAnn Takahashi, Marisa Castagna, Ioane Ah-Sam,

Stephanie Fo, Ryan Okuhara.

PRAYER FOR RELIEF

1. Plaintiff requests mercy for her inartful pleadings and asks the court to order the defendants to bring Makua Ali'i in line with the standards for how the Coronavirus needs to be handled by senior centers by taking care of the roach infestations where they are known.

2. Order the defendants to move tenants Sandra Tautua and Yung Sing Chong to at least a different floor, but ideally to a different building within Kalakaua Homes. Plaintiff was offered a transfer so there are openings elsewhere.

3. Grant such other declaratory and injunctive relief as may be proper.

4. Order Defendants to pay compensatory damages, including damages for emotional distress, pain, and suffering, including damages associated with each incident of discrimination within the last year.

5. Award plaintiff reasonable attorneys' fees, reasonable expert witness fees, and other costs of this action pursuant to U.S.C 42; and

6. Order such other relief as this Court considers just and proper.

DATED: Honolulu, Hawaii, July 14, 2020

**TANGEE RENEE LAZARUS**

Plaintiff

24